Layne Friedrich (Bar No. 195431)
  layne@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
  drev@lawyersforcleanwater.com
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Michael Lozeau (Bar No. 142893)
  michael@lozeaudrury.com
LOZEAU | DRURY LLP
1516 Oak Street, #216
Alameda, California 94501
Telephone: (510) 749-9102
Facsimile: (510) 749-9103

*Attorneys for Plaintiff*
California Sportfishing Protection Alliance

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF SACRAMENTO, a municipality;<br><br>       Defendant. | Civil Case No.: CV 11-00601-KJM-EFB<br><br>**CONSENT DECREE** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and defendant City of Sacramento ("City" or "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Sacramento River, the American River, and the Sacramento-San Joaquin River Delta;

**WHEREAS**, the City is a municipal corporation and is a permittee on the (1) *Waste Discharge Requirements Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova, Sacramento, and County of Sacramento Storm Water Discharges from Municipal Separate Storm Sewer System Sacramento* (MS4), NPDES Permit No. CAS082597, Order No. R5-2002-0206 California Regional Water Quality Control Board Central Valley Region ("2002 MS4 Permit"), and (2) *Waste Discharge Requirements Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova, Sacramento, and County of Sacramento Storm Water Discharges from Municipal Separate Storm Sewer System Sacramento* (MS4), NPDES Permit No. CAS082597, Order No. R5-2008-0142 California Regional Water Quality Control Board Central Valley Region ("2008 MS4 Permit");

**WHEREAS**, on December 29, 2010, CSPA provided the Defendant, the Administrator and the Regional Administrator for Region IX of the United States Environmental Protection Agency ("EPA"), the Executive Director of the California State Water Resources Control Board ("State Board"), and the Executive Officer of the California Regional Water Quality Control Board, Central Valley Region ("Regional Board") with a Notice of Violation and Intent to File Suit ("Notice Letter") under section 505(a) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a).  The Notice Letter alleged that Defendant violated and continues to violate the Clean Water Act for discharges of pollutants in violation of the Clean Water Act, the 2002 MS4 Permit, and/or the 2008 MS4 Permit;

**WHEREAS**, on March 3, 2011, Plaintiff filed its complaint in the United States District

Court for the Eastern District of California ("District Court") against Defendant, Case No. CV-11-00601-KJM-EFB (hereinafter "Complaint");

**WHEREAS**, Defendant denies CSPA's allegations that it has violated the Clean Water Act and/or any of the permits as alleged in the Complaint;

**WHEREAS**, it is the intent of the Defendant to meet the SSO Reduction Standards described in Table 1 below by implementing the operational activities and capital improvements contained within this Consent Decree through a multi-year funding plan.  The operational activities and capital improvements will be phased in over the period of this Consent Decree as described further in the following sections of the Consent Decree.

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of the Complaint's claims or admission by Defendant of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement and avoid the costs and uncertainties of further litigation;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties each hereby agree as follows:

## I.   GENERAL OBJECTIVES

1.   The objectives of this Consent Decree are:

a.  To ensure that Defendant uses, implements, and improves ways, means, and methods to prevent sanitary sewer overflows;

b.  To ensure that Defendant uses, implements, and improves ways, means, and methods to prevent violations of, or comply with, applicable permits, laws, and regulations as related to sanitary sewer overflows.

## II.   DEFINITIONS

2.   Unless otherwise expressly defined herein, terms used in this Consent Decree, which are defined in the CWA, Porter-Cologne, or in regulations implementing these statutes, have the meaning assigned to them in the applicable statutes, regulations, or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.  "CCTV" means closed-circuit television.

b. "CIP" means the City of Sacramento's sanitary sewer capital improvement program.

c. "City Collection System" means the separated sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership of and/or operation by the City of Sacramento that are used to convey wastewater generated by residential, commercial, and industrial sources within the City of Sacramento to the sewage collection system owned and operated by the Sacramento Regional County Sanitation District ("SRCSD"), where it is subsequently delivered to the Sacramento Regional Wastewater Treatment Plant.  For purposes of this Consent Decree, the City Collection System does not include the Combined Sewer System, Privately Owned Laterals or any other public or private infrastructure that connects to the City Collection System that is not owned or operated by the City.

d. "Condition Assessment Inspection" means an inspection of a sewer segment by CCTV that results in documentation of a Condition Assessment Rating for the inspected sewer segment. "Condition Assessment Inspection" does not include CCTV inspection for cleaning quality assurance/quality control, spill follow-up, FOG source investigations, or other types of CCTV inspection unless those inspections yield a Condition Assessment Rating for the entire sewer segment.

e. "Condition Assessment Rating" means an assignment of the condition given based on the Pipeline Assessment and Certification Program Standard ("PACP").

f. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, or furlough day that results in the closure of City offices, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday or furlough day.

g. "FOG" means fats, oil, and grease.

h. "FSE" means Food Service Establishment, any facility where food is served and intended for individual portion service, and includes the site at which individual portions are provided.  As used herein. "FSE" includes any facility defined as a FSE under Section 13.08.020 of the Sacramento City Code.

i. "MS4" means the City of Sacramento's municipal separate storm sewer system. The MS4 includes the entire "municipal separate storm sewer" as that term is defined in 40 C.F.R. § 122.26(b)(8).

j. "NPDES" means National Pollutant Discharge Elimination System.

k. "Sanitary Sewer Overflow" or "SSO" means any overflow, spill, release, discharge or diversion of untreated or partially treated wastewater from the City Collection System that is caused by a blockage or other condition in the City Collection System. SSOs include:  (i) Overflows or releases of untreated or partially treated wastewater that reach waters of the United States; (ii) Overflows or releases of untreated or partially treated wastewater that do not reach waters of the United States; and (iii) Wastewater backups into buildings and on private property. For purposes of this definition, "waters of the United States" has the meaning as set forth in 40 C.F.R. § 122.2. Facilities for the temporary storage and conveyance of untreated or partially treated wastewater (such as vaults, temporary piping, construction trenches, wet wells, impoundments, tanks, etc.) are considered to be part of the sanitary sewer system, and discharges and/or diversions into these facilities are not considered to be SSOs.

l. "Sewer segment" means any section of sewer line or pipe that is part of the City Collection System and located between: (1) two manholes/maintenance holes; (2) a pump station and a manhole/maintenance hole; (3) a pump station or a manhole/maintenance hole and a headworks structure; or (4) a sewer line or pipe otherwise identifiable as a discrete section.

m. "SSMP" means the 2008-2009 Sewer System Management Program and subsequent amendments developed and implemented by Defendant for the City Collection System in accordance with the SSO WDR.

n. "CD Year" or "Consent Decree Year" shall mean

| CD Year | Dates |
|---|---|
| 0 (CD Effective Date to June 30, 2012) | Effective Date to June 30, 2012 |
| 1 | FY 2012-2013 |
| 2 | FY 2013-2014 |
| 3 | FY 2014-2015 |
| 4 | FY 2015-2016 |
| 5 | FY 2016-2017 |

o. "Combined Sewer System" means the combined wastewater collection and treatment system operated by the City and regulated pursuant to (NPDES) Permit No. CA0079111 and Waste Discharge Requirements Order R5-2010-0004.

p. "Privately Owned Lateral" means that portion of a customer's private sewer line that connects to the city sewer system, including that portion of the private sewer line located within the public right-of-way

q. "SSO WDR" means the Statewide General Waste Discharge Requirements for Sanitary Sewer Systems, Order WQ 2006-0003 and any subsequently adopted revisions.

### III.   JURISDICTION AND VENUE

3.      For purposes of settlement, the Settling Parties stipulate to the Court's jurisdiction to enter and retain jurisdiction over the Settling Parties to enforce the terms of this Consent Decree if necessary.

### IV.   EFFECT OF CONSENT DECREE

4.      Plaintiff does not, by its agreement to this Consent Decree, warrant or aver in any manner that the Defendant's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendant to comply with all applicable Federal, State and local laws and regulations governing any activity required by this Consent Decree.

5.      Nothing in the Consent Decree shall be construed as an admission by Defendant, and does not intend to imply any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree be construed as an admission by Defendant of any fact, finding, conclusion, issue of law, or violation of law.

### V.   APPLICABILITY

6.      The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. Each Settling Party certifies that its undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the respective Settling Party, and to legally bind the respective Settling Party to its terms. The Settling Parties agree not to contest the validity of this Consent Decree in any subsequent proceeding to implement or enforce its terms.

7.      No change in legal status of the Defendant or any transfer of the Defendant's assets or liabilities shall in any way alter the responsibilities of the Defendant or any of its successors or assigns thereof, under this Consent Decree.

## VI.      EFFECTIVE DATE AND TERMINATION DATE

8.      The term "Effective Date," as used in this Consent Decree, shall mean the last date for the United States Department of Justice to comment on the [proposed] Consent Decree, i.e., the 45th day following the United States Department of Justice's receipt of the [proposed] Consent Decree.

9.      This Consent Decree will terminate on December 31, 2017.

## VII.      SSO AND SPILL REDUCTION PERFORMANCE STANDARDS

10.      <u>SSO Reduction</u>. It is the goal of the Parties that implementation of this Consent Decree will reduce SSOs from the City Collection System as provided in Table 1. Table 1 sets forth the SSO reduction requirements and lists the maximum number of SSOs per 100 miles of sewer per year ("SSO Reduction Performance Standard"). Defendant shall reduce SSOs from the City Collection System as provided in Table 1.

Table 1 – SSO Reduction Performance Standards

| CD Year | Maximum Number of SSOs Per 100 Miles of Sewer /Year |
|---|---|
| 0 (CD Effective Date to June 30, 2012) | N/A |
| 1 (FY 2012-2013) | 11 |
| 2 (FY 2013-2014) | 10 |
| 3 (FY 2014-2015) | 8 |
| 4 (FY 2015-2016) | 6 |
| 5 (FY 2016-2017) | 5 |

11.      For the purposes of establishing the SSO Reduction Performance Standards, an SSO (a) of thirty five (35) gallons or less and (b) that does not reach a drain inlet, storm drain main, pipe, manhole, pumping station or surface water body will not be counted. SSOs entering the MS4 or entering a paved surface of the public right of way adjacent to the MS4 (such as a sidewalk) when it is raining are not eligible for this exception. Field reports shall document weather conditions at the time of the SSO event.

12.      Compliance with SSO Reduction Performance Standards shall be determined using

the miles of sewer reported by the Defendant in each CD Year's Annual Report required under Section XIV of this Consent Decree.

13.     Failure to meet the SSO Reduction Performance Standard in any particular CD Year shall be a violation of the Consent Decree subject to the dispute resolution procedures of Section XVII of this Consent Decree.

## VIII.   SSO REDUCTION ACTION PLAN

14.     Defendant shall report any failure to meet an applicable SSO Reduction Performance Standard in each Annual Report required under Section XIV of this Consent Decree. In the event Defendant fails to meet an applicable SSO Reduction Performance Standard for any particular CD Year (as set forth in Table 1), Defendant shall propose operational changes and a funding schedule if necessary to meet the SSO Reduction Performance Standard in Defendant's Annual Report required under Section XIV of this Consent Decree.

15.     An SSO Reduction Action Plan prepared pursuant to this section shall specify the actions taken in the CD Year for which the Annual Report was submitted that were designed to achieve compliance with the SSO Reduction Performance Standards, and shall specify additional measures to be taken during the current CD Year and thereafter to achieve compliance with the SSO Reduction Performance Standards. Defendant may include any or all elements in the SSO Reduction Action Plan in the SSMP for the City Collection System. The SSO Reduction Action Plan shall include a proposed schedule for implementation of all actions proposed.

16.     CSPA shall provide the Defendant, in writing, with all recommended revisions to the SSO Reduction Action Plan within thirty (30) days of receipt of such SSO Reduction Action Plan. Defendant shall consider each of CSPA's recommended revisions and indicate within thirty (30) days of receipt whether Defendant accepts each such recommended revision. For each recommended revision not accepted, if any, Defendant shall provide a written explanation for its refusal to accept said revision. The Defendant shall implement all agreed upon provisions and/or revisions of the SSO Reduction Action Plan. If the Defendant does not accept each and every one of CSPA's recommendations, then CSPA may seek dispute resolution pursuant to Section XVII of this Consent Decree.

17.     Defendant shall begin implementation of the agreed upon portions of any SSO Reduction Action Plan in accordance with the schedule set forth therein as an enforceable requirement of this Consent Decree as soon as possible, but not more than, sixty (60) days following agreement.

18.     Defendant shall begin implementation of any disputed portions of any SSO Reduction Action Plan agreed to or ordered following the resolution of any dispute resolution process as an enforceable requirement of this Consent Decree as soon as possible, but not more than, sixty (60) days following resolution of any dispute resolution process related to those portions and associated schedule of such SSO Reduction Action Plan.

**IX.     SEWER CONDITION ASSESSMENT/REHABILITATION/REPLACEMENT**

19.     The City shall continue to implement and improve its CCTV inspection and condition assessment ("Condition Assessment Inspection") Program as described in the SSMP consistent with the terms set forth below:

20.     Defendant will complete a one-time Condition Assessment Inspection by the end of CD Year 5 (FY 2016-2017) of all gravity sewers less than 15 inches in diameter in the City Collection System that are ten (10) years old or older and have not been inspected and their condition assessed within the five (5) years preceding CD Year 1. Sewer segments that are currently less than ten (10) years old but which reach the age of ten (10) years during the life of this Consent Decree shall be inspected by CCTV and their condition shall be assessed. The sewer system areas selected to be inspected using CCTV shall be prioritized consistent with the Targeted Cleaning and Frequency Criteria developed pursuant to paragraph 32 based upon SSO occurrence rates, age of infrastructure, pipe type and pipe size. At a minimum, the percentage of sewer mileage to be assessed under this paragraph during the term of the CD is as follows: 30% complete by the end of CD Year 1 (FY 2012-2013), 45% complete by the end of CD Year 2 (FY 2013-2014), 70% complete by the end of CD Year 3 (FY 2014-2015), 85% complete by the end of CD Year 4 (FY 2015-2016) and 100% complete by the end of CD Year 5 (FY 2016-2017).

21.     During the Condition Assessment Inspections required by this Consent Decree, the quantity of main line gravity sewers shall be recorded, and the condition of each sewer segment

inspected shall be coded using the Pipeline Assessment and Certification Program ("PACP") standard ("Condition Assessment Rating"). The Condition Assessment Rating shall be entered into an inspection database (which may be included as part of a larger database). The database shall include the assigned Condition Assessment Rating for all sewer segments inspected, prioritized repair projects, and prioritized rehabilitation/replacement projects, and will be managed utilizing software capable of reporting and tracking inspection results. The annual inspection quantity of main line gravity sewers will include the sum of the lengths of all of the gravity sewers where inspection was completed.

22.     Defendant shall correct observed structural defects identified pursuant to paragraphs 20 and 21 beginning with the Effective Date of this Consent Decree within the timeframes set forth in Table 2 (Timeframe for Actions to Correct Observed Structural Defects)[1].

Table 2 – Timeframe for Actions to Correct Observed Structural Defects

| Observed Defect | Corrective Action | Time Frame (from date defect observed) |
|---|---|---|
| PACP Grade 5 Structural Defect – Immediate Failure Likely | Spot Repair or emergency CIP | ASAP (no more than 180 days) |
| PACP Grade 5 Structural Defect – Immediate Failure Unlikely | Repair, rehabilitate, or re-inspect sewer | All defects observed in CD Years 0-3: within the term of the CD. |

23.     In the Annual Report required under Section XIV of this Consent Decree, Defendant shall provide: the miles of sewer assessed in the previous year; the miles of sewer assessed receiving grades 4 and 5 in the PACP grading system in the previous year; and a summary of the mileage of and identification of mainline gravity sewers repaired, rehabilitated and/or replaced as a result of the inspections completed during the previous year or years prior.

## X.     FATS, OILS AND GREASE PROGRAM

24.     The City shall continue to implement and improve its current FOG Control Program as described in the SSMP consistent with the terms set forth below. The current FOG Control Program described in the SSMP includes reactive and preventative grease control activities that will be coordinated with the new enforcement, inspection and targeted FOG control programs described below. The criteria for reactive and preventative maintenance activities and frequencies will be

---

[1] Any action specified in Table 2 that would occur beyond the termination date of this Consent Decree as specified in paragraph 9 shall not be an enforceable action subject to the terms and conditions set forth herein.

1   modified as described in paragraph 32.

2        25.    During CD Year 1 (FY 2012-2013), Defendant will identify staff to coordinate FOG

3   inspection, investigation and enforcement efforts. Beginning in CD Year 2 (FY 2013-2014), the City

4   shall annually inspect each FSE with a grease interceptor device, or any FSE that is found to be the

5   cause of an SSO. If the City finds that a FSE is discharging FOG and/or not properly maintaining a

6   grease removal device, the City's enforcement shall include education and verbal warnings, and the

7   City may order the installation of a grease removal device, including a grease interceptor. The City

8   shall re-inspect within sixty (60) days any FSE where the City's first inspection found FOG

9   discharges causing an SSO and/or an improperly maintained grease removal device. Where the City

10   has ordered the installation of a grease removal device, the re-inspection shall occur within 30 days of

11   the deadline for compliance with the order. The City will enforce its municipal code prohibition

12   against the discharge of FOG if a FOG discharge is observed during re-inspection or otherwise

13   documented, which will include issuance of a Notice of Violation and may include imposition of a

14   penalty and/or an order to install a grease removal device, including a grease interceptor. If the City

15   finds that a FSE has two (2) or more occurrences of FOG discharges causing an SSO within a CD

16   Year, the City shall seek a penalty in accordance with the procedure specified in the City's municipal

17   code.

18        26.    The City shall distribute door hangers to all homes found to be the cause of a FOG-

19   related SSO as indicated in the SSMP FOG Residential Outreach and Communication plan. In

20   addition, the City shall distribute door hangers to the management of any apartment complex found to

21   be the cause of a FOG-related SSO for distribution to residents of the apartment complex.  The public

22   outreach program will be expanded during CD Year 4 (FY 2015-2016) as needed to support the

23   targeted FOG cleaning program.

24        27.    In the Annual Report required under Section XIV of this Consent Decree, the City

25   shall document the activities carried out under the FOG Program during the previous year. The report

26   shall at a minimum: document cleaning activities, FOG inspections and results of inspections,

27   including any enforcement; summarize FOG outreach efforts; present the City's analysis of the

28   effectiveness of the FOG Program; and identify any changes to be implemented in the subsequent

1  year.

## XI.    ROUTINE AND TARGETED SEWER CLEANING

2

3      28.    <u>Routine Cleaning</u>. Defendant shall continue to clean all of its main line gravity sewers

4  fifteen (15) inches in diameter or smaller (approximately 506 miles).  Each of these pipes will be

5  cleaned at least once by the end of CD Year 5 (FY 2016-2017).

6      29.    <u>Interim Targeted Cleaning Program</u>. Until the Targeted Cleaning and Frequency

7  Criteria contemplated in paragraph 32 are developed and implemented, Defendant shall continue the

8  targeted cleaning program described in the SSMP. Defendant shall continue to document all

9  observations made by its sewer cleaning crew regarding the extent and nature of materials removed

10  during the cleaning process. Sewer segments shall be prioritized for cleaning based on SSO

11  occurrence rates, age of pipe, size of pipe, and SSO cause.

12      30.    The City shall hire eight (8) additional sewer division staff prior to beginning of CD

13  Year 1 (FY 2012-2013) to assist in the routine and targeted cleaning programs.  At least four (4)

14  sewer division staff shall be assigned to the Interim Targeted Cleaning Program required under this

15  Consent Decree.

16      31.    Defendant will develop Targeted Cleaning and Frequency Criteria as follows:

| Tasks | Schedule for Completion |
|---|---|
| Develop New Targeted Cleaning and Frequency Criteria | October 30, 2012 |
| Designate staff or hire Maintenance Scheduler | During CD Year 1 (FY 2012-2013) |
| Designate staff or hire Wastewater Collection System Database Manager | During CD Year 1 (FY 2012-2013) |
| Develop new database and reporting tools | During CD Year 1 (FY 2012-2013) |
| Develop new cleaning schedules | During CD Year 1 (FY 2012-2013) |
| Fully implement cleaning schedules | July 1, 2013 |

25      32.    Not later than October 30, 2012, Defendant will submit to CSPA, in writing, the

26  proposed Targeted Cleaning and Frequency Criteria, and CSPA shall have the opportunity to

27  recommend revisions to the these criteria within thirty (30) days of receipt. Defendant shall consider

28  each of CSPA's recommended revisions and indicate within thirty (30) days of receipt whether

Defendant accepts each such recommended revision. For each recommended revision not accepted, if any, Defendant shall provide a written explanation for its refusal to accept said revision. If the Defendant does not accept each and every one of CSPA's recommendations, then CSPA may seek dispute resolution pursuant to Section XVII of this Consent Decree.

33.     Defendant shall implement all agreed upon elements and/or revisions to the Targeted Cleaning and Frequency Criteria as an enforceable requirement of this Consent Decree in accordance with the schedule specified in paragraph 31.

34.     Defendant shall begin implementation of any disputed elements and/or revisions to the Targeted Cleaning and Frequency Criteria agreed to or ordered following the resolution of any dispute resolution process as an enforceable requirement of this Consent Decree in accordance with the schedule specified in paragraph 31, or within thirty (30) days following resolution of any dispute resolution process related to the elements and/or revisions to the Targeted Cleaning and Frequency Criteria, whichever is later.

35.     <u>Sewer Cleaning Quality Assurance/Quality Control Program</u>: Defendant shall document, institute and maintain a quality assurance/quality control ("QA/QC") program adequate to ensure proper cleaning of sewers beginning in CD Year 1 (FY 2012-2013). The QA/QC program shall consist of annual and follow up staff training by an industry professional to ensure implementation of adequate cleaning procedures. The QA/QC program shall consist of spot checking the cleaning quality in a minimum of five (5) percent by sewer segment or a minimum of three (3) sewer segments (whichever is greater) of the cleaned sewers on a monthly basis using CCTV to ensure adequate cleaning. If the cleaning is found to be inadequate, the sewer segment will be re-cleaned within thirty (30) days. If the re-cleaning is again found to be inadequate, the identified crew leader and his/her crew will be re-trained.

## XII.   TARGETED ROOT CONTROL PROGRAM

36.     Defendant shall perform chemical and mechanical root control of 6-inch, 8 inch and 10 inch main line sewers within targeted problem areas identified by evaluating SSO causes, SSO rates and PACP scores and consistent with the Targeted Cleaning and Frequency Criteria developed pursuant to paragraph 32.

37.    Beginning in CD Year 2 (FY 2013-2014), Defendant will identify targeted areas for chemical root control and track the effectiveness of the chemical root control applications. Targeted areas will be identified by evaluating SSO causes, SSO rates and PACP scores. Approximately 50 miles of annual targeted chemical root control will be completed by in-house staff beginning in CD Year 2 (FY 2013-2014). In addition, approximately 200 miles of annual targeted contract chemical root control will be completed in CD Year 2 (FY 2013-2014) and CD Year 3 (FY 2014-2015). Contract root control may be reduced in CD Year 4 (FY 2015-2016) after an analysis of root control results.

38.    CCTV inspections will follow chemical root control activities to assess effectiveness of applications and will include pipe condition assessments consistent with Section IX of this Consent Decree. FOG cleaning, reactive maintenance or repair needs will be evaluated and coordinated with this targeted cleaning effort.

39.    The City shall annually evaluate the effectiveness of the targeted chemical root control program and present its findings and any recommended changes in the Annual Report required under Section XIV of this Consent Decree.

### XIII.   CAPITAL IMPROVEMENT PROJECTS

40.    Defendant shall complete the following Capital Improvement Projects within the timelines provided for:

| Project Number/Name | Description | Schedule for Completion |
|---|---|---|
| X106: Basin 55 I&I Reduction | Line sewer mains, sewer services, and rehabilitate manholes at various locations | CD Year 1 (FY 2012-2013) |
| XJ01: Pocket AD 2 I&I Reduction | Reduce infiltration; monitor effectiveness | CD Year 1 (FY 2012-2013) |
| X14003900: Sump 85 Influent Rehab/ Replace | Replacement approx. 2,745 feet of 24" trunk main and all connections. Replace 11 manholes with No. 4 manholes. Rehab 3 manholes. | CD Year 1 (FY 2012-2013) |
| X14110400: Sewer Manhole Rehab/ Replacement | Rehabilitate existing sewer manholes by placing a flowline, bench or liner to maintain structural stability | CD Year 2 (FY 2013-2014) |

| X14110900: Sewer Rehab | Rehabilitate various sewer mains throughout the city by installing internal cured-in-place-pipe (CIPP) liners. | CD Year 3 (FY 2014-2015) |
|---|---|---|
| X14120900: Gloria Avenue Pipe Replacement | Replace approximately 220 feet of 6-inch diameter sewer. | CD Year 5 (FY 2016-2017) |
| X14120600: Lampasas Avenue Sewer Main Replacement | Replace and upsize existing 6 inch diameter VCP pipe with an 8 inch diameter PVC pipe. | CD Year 5 (FY 2016-2017) |
| X1420700: Sewer Rehab 2012 | Rehabilitate existing sewer pipes by installing a cured-in-place liner. Only a portion of the budgeted amount will be for separated sewer system improvement projects. | CD Year 5 (FY 2016-2017) |
| X14120800: Congress Ave Pipe Replacement | Replace approximately350 feet of existing 6-inch sewer with 8-inch sewer pipe. | CD Year 5 (FY 2016-2017) |

## XIV.   ANNUAL REPORT ON COLLECTION SYSTEM

41.     Beginning with CD Year 1 (FY 2012-2013), within ninety (90) days after the end of each CD Year that this Consent Decree remains in effect, Defendant shall submit an Annual Report to CSPA. The Annual Report shall provide details relevant to the Defendant's implementation of, and compliance with, this Consent Decree during the preceding CD Year, including:

a.     A statement and explanation of the Defendant's performance in meeting the SSO reduction goals listed in Table 1 SSO Reduction Performance Standard for the preceding CD Year;

b.     In the event Defendant fails to meet the goals for the applicable SSO Reduction Performance Standard for any particular CD Year (as set forth in Table 1), in the Annual Report, Defendant shall propose operational changes and a funding schedule, if necessary, to meet the SSO Reduction Performance Standard;

c.     Any program modifications or delays during the preceding CD Year;

d.     The miles of sewer assessed in the previous year; the miles of sewer assessed receiving grades 4 and 5 in the PACP grading system; and a summary of the mileage of and identification of mainline gravity sewers repaired, rehabilitated and/or replaced as a result of the inspections completed during the previous year or years prior;

e.     The activities carried out under the FOG Program during the previous year.  The

1   report shall at a minimum:  document cleaning activities, FOG inspections and results of inspections;

2   summarize FOG outreach efforts; present the City's analysis of the effectiveness of the FOG

3   Program; include any changes to be implemented in the subsequent year;

4      f. An evaluation of the effectiveness of the targeted chemical root control program,

5   including any recommended changes.

6    **XV. PAYMENT OF LITIGATION COSTS, MONITORING OF CONSENT DECREE**
   **COMPLIANCE, AND MITIGATION PAYMENT**

7     42. <u>Fees and Costs</u>. To help defray CSPA's attorneys, consultant, and expert fees and

8   costs, and any other costs incurred as a result of investigating, filing this action, negotiating a

9   settlement, and monitoring compliance with the settlement, Defendant shall pay Plaintiff the sum of

10  One Hundred Eighty Five Thousand Dollars ($185,000.00) which shall include all attorneys' fees and

11  costs for all services performed by and on behalf of CSPA by its attorneys and consultants up to and

12  through the Effective Date of this Consent Decree and inclusive of ongoing compliance monitoring

13  costs. Fifty Thousand Dollars ($50,000.00) of the above amount are for future monitoring of the

14  Consent Decree. The payment shall be made within twenty (20) days of the Effective Date of this

15  Consent Decree. The payment shall be made in the form of a check payable to "***Lawyers for Clean***

16  ***Water Attorney Client Trust Account***" addressed to: 1004-A O'Reilly Avenue, San Francisco,

17  California 94129, sent overnight delivery, and shall constitute full payment for all costs of litigation

18  incurred by CSPA that have or could have been claimed in connection with or arising out of CSPA's

19  lawsuit, up to and including the Effective Date and inclusive of compliance monitoring costs during

20  the term of this Consent Decree.

21    43. <u>Mitigation Payment</u>. Defendant shall pay to the Rose Foundation for Communities and

22  the Environment the total sum of One Hundred Ten Thousand Dollars ($110,000.00) to be used to

23  fund environmental project activities in the Sacramento region that will benefit the American River

24  and/or Sacramento River watersheds, ("the Mitigation Payment"). The Mitigation Payment shall be

25  made within thirty (30) days of the Effective Date of this Consent Decree, and sent to:

26

27     The Rose Foundation for Communities and the Environment
   Attention: Tim Little

28     6008 College Avenue, Suite 10
   Oakland, California 94618

## XVI.   SUBMISSION OF CONSENT DECREE FOR AGENCY REVIEW

44.      CSPA shall submit a copy of this Consent Decree to EPA and the United States Department of Justice ("DOJ") within three (3) days of its execution for agency review consistent with 40 C.F.R. § 135.5.

45.      In the event that EPA or DOJ comment negatively on the provisions of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

## XVII.  BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

46.      <u>Force Majeure</u>. Defendant shall notify CSPA pursuant to the terms of this paragraph, when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts of Defendant, due to circumstances beyond the control of Defendant or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant. Any delays due to Defendant's failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree in normal inclement weather shall not, in any event, be considered to be circumstances beyond Defendant's control. Financial inability shall not, in any event, be considered to be circumstances beyond Defendant's control.

a.      If Defendant claims compliance was or is impossible, it shall notify CSPA in writing within thirty (30) days of the date that Defendant first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendant should have known of the event or circumstance by the exercise of reasonable diligence. The notice shall describe the reason for the nonperformance and specifically refer to this Section of this Consent Decree. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendant shall adopt all reasonable measures to avoid and minimize such delays.

b.      The Settling Parties shall meet and confer in good-faith concerning the non-compliance and, where the Settling Parties concur that compliance was or is impossible, despite the timely good faith efforts of Defendant, due to circumstances beyond the control of Defendant that

could not have been reasonably foreseen and prevented by the exercise of reasonable diligence by Defendant, new performance deadlines shall be established or relevant performance obligations shall be amended as appropriate.

c.   If CSPA disagrees with Defendant's notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party shall have the right to invoke the Dispute Resolution Procedures pursuant to Section XVII of this Consent Decree. In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure, as defined herein, and the extent of any delay attributable to such circumstances.

47.   The Settling Parties agree that any action or proceeding which is brought by any Settling Party against any other Settling Party pertaining to, arising out of or related to the requirements of this Consent Decree, which may include, but is not limited to, any claim by Defendant that it will be unable to fund compliance with any provision of this Consent Decree, in whole or in part, including compliance with any timelines and schedules set forth in this Consent Decree, due to the occurrence of a Proposition 218 majority protest against any proposed sewer rate increase or a voter approved initiative to freeze or reduce sewer rates, shall first use the Informal Dispute Resolution meet and confer proceedings set forth in Paragraph 48 and, if not successful, the Settling Parties shall use the Formal Dispute Resolution procedures in Paragraph 49. Unless otherwise specifically provided for in this Consent Decree, the Dispute Resolution Procedures set forth in Paragraphs 48 and 49 shall be the exclusive mechanism for resolving disputes between the Settling Parties with regard to any aspect of this Consent Decree.

48.   <u>Informal Dispute Resolution</u>. The Settling Parties agree to engage in Informal Dispute Resolution pursuant to the terms of this paragraph:

a.   If a dispute under this Consent Decree arises, or any Settling Party believes that a breach of this Consent Decree has occurred, the Settling Parties shall meet and confer (telephonically or in-person) within ten (10) days of receiving written notification of a request for such meeting. During the meet and confer proceeding, the Settling Parties shall discuss the dispute and make best efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute.

The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond ten (10) days.

          b.   If any Settling Party fails to meet and confer within the timeframes set forth in Paragraph 48(a), or the meet and confer does not resolve the dispute, after at least ten (10) days have passed after the meet and confer occurred or should have occurred, either Settling Party shall be entitled to initiate the Formal Dispute Resolution procedures outlined in Paragraph 49 below.

     49.   <u>Formal Dispute Resolution</u>. The Settling Parties agree that Formal Dispute Resolution shall be initiated by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in the United States District Court, Eastern District of California, before the Honorable Judge Kimberly J. Mueller (or the District Court judge otherwise assigned to this matter at that time) to determine whether either party is in breach of this Consent Decree and, if so, to require the breaching party to remedy any such breach.  The Settling Parties agree to stipulate to an expedited review of the Motion by the Court if requested by any Settling Party.

     50.   Litigation costs and fees incurred in conducting meet and confers or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by section 505 of the Clean Water Act, 33 U.S.C. § 1365, and case law interpreting that standard.

**XVIII. STIPULATED PAYMENTS**

     51.   <u>Penalties for Failure to Submit Timely Reports</u>: Defendant agrees to pay stipulated payments in the event reports required by this Consent Decree are not timely submitted. A report shall be considered "submitted" to CSPA on the date it is deposited in the U.S. mail, as indicated by the postal date stamp.

          a.   The Defendant shall pay stipulated payments as set forth in subsection (b) below in the event that any of the following reports are not timely filed: (i) The annual reports as specified Section XIV including any required SSO Reduction Action Plan; and (ii) The Targeted Cleaning and Frequency Criteria as specified in paragraph 32 of Section XI.

          b.   Schedule for stipulated payments:

               i.   The Defendant shall pay $100 per day until the report is submitted, up to

fifteen (15) days for a total amount of $1,500.

        ii.   For any report more than fifteen (15) days the Defendant shall pay $1,000.

        iii.   For any report more than thirty (30) days late, the Defendant shall pay $2,000.

        iv.   For any report more than ninety (90) days late, the Defendant shall pay $5,000.

        v.   The above penalties are cumulative, as applicable, to a maximum penalty of $9,500 per report.

52.     If a report is submitted late, CSPA shall notify the Defendant of receipt of the late report and shall include an invoice for the amount of the stipulated penalty, if any, due and payable. The Defendant shall contact CSPA within five (5) working days if the Defendant disagrees with CSPA's stipulated penalty calculation and may meet and confer with CSPA or seek dispute resolution pursuant to Section XVII of this Consent Decree. The Defendant shall pay any stipulated payments due pursuant to this Consent Decree within thirty (30) days after receipt of CSPA's invoice itemizing the stipulated payment liability, or, if the dispute resolution process has been invoked pursuant to Section XVII of this Consent Decree, and upon completion of the dispute resolution process Defendant is determined to be liable for the stipulated payment, within thirty (30) days after the dispute resolution process is completed.

53.     All payments of stipulated penalties described in this Consent Decree shall be paid by the Defendant to the Rose Foundation for Communities and the Environment and sent via overnight mail to: Rose Foundation for Communities and the Environment, 6008 College Avenue, Oakland, California 94618, Attention: Tim Little.

54.     Nothing in this Consent Decree shall prevent CSPA from waiving any stipulated penalties, which might be due under this Section, based on the outcome of the Informal Dispute Resolution process, or based on the Defendant's good faith efforts.

### XIX.   NOTICES AND SUBMISSIONS

55.     Defendant agrees to provide Plaintiff with all documents or reports required by this Consent Decree.  All documents shall be directed to the following individuals at the addresses specified below unless specifically stated otherwise herein. Any change in the individuals or addresses designated by any party must be made in writing to all Settling Parties.

If to CSPA:

Drevet Hunt
Lawyers for Clean Water, Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Email: drev@lawyersforcleanwater.com

California Sportfishing Protection Alliance
Bill Jennings, Executive Director
3536 Rainier Avenue
Stockton, California 95204
Telephone: 209-464-5067
Fax: 209-464-1028
Email: deltakeep@me.com

If to the Defendant:

Roberta L. Larson
Somach Simmons & Dunn, LLP
500 Capitol Mall, Suite 1000
Sacramento, California 95814
Telephone: (916) 446-7979
Fax: (916) 446-8199
Email: blarson@somachlaw.com

Brett M. Witter
Office of the City Attorney
915 I Street, Fourth Floor
Sacramento, CA  95814-2604
Telephone:  (916) 808-5346
Fax:  (916) 808-7455
Email:  bwitter@cityofsacramento.org

David Brent, Interim Director
Department of Utilities
City of Sacramento
1391 35th Avenue
Sacramento, CA  95822
Telephone: (916) 808-1444
Fax:  (916) 808-1497
Email:  dbrent@cityofsacramento.org

56.     Defendant also agrees to make available to CSPA any existing non-privileged

documents within the Defendant's custody or control that are reasonably necessary to evaluate

system performance and/or compliance with this Consent Decree within thirty (30) days of written request by CSPA. In the event of any dispute regarding the disclosure of any document or other record to CSPA either party may seek dispute resolution pursuant to Section XVII of this Consent Decree.

57.     During the life of this Consent Decree, Defendant shall preserve at least one legible copy of all records and documents, including computer-stored information, which relate to performance of its obligations under this Consent Decree.

58.     Any notice, report, certification, data presentation or other document submitted by Defendant to CSPA pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this Consent Decree, shall contain the following certification, signed and dated by a responsible official:

> I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

## XX.     MUTUAL RELEASE OF LIABILITY

59.     Upon the District Court's approval and entry of this Consent Decree, the Settling Parties and their successors, assigns, directors, officers, agents, attorneys, representatives, and employees, release all persons, including the Defendant and their respective officers, council members, employees, agents, attorneys, representatives, contractors, insurers, predecessors, successors and assigns, past and present, from, and waives all claims for, injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed in this action, up to the Effective Date of this Consent Decree.  This release includes a release, and covenant not to sue, for any claims of injunctive relief, damage, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts and others), costs, expenses or any other sum incurred or claimed based on facts or allegations set forth in the Notice Letter and/or Complaint up to the Effective Date of this Consent Decree.

60.     Nothing in this Consent Decree limits or otherwise affects CSPA's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before

any judicial or administrative body on any other matter relating to Defendant that does not pertain to the City Collection System.

## XXI.   GENERAL PROVISIONS

61.   <u>Continuing Jurisdiction</u>. The Parties stipulate that the District Court shall retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree up to and including the Termination Date in paragraph 9.

62.   <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in Section II above.

63.   <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

64.   <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

65.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, scanned copies (i.e., pdf) and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

66.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

67.   <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

68.   <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

69.   <u>Authority</u>. The undersigned representatives for CSPA and the Defendant each certify

1  that he/she is fully authorized by the Settling Party whom he/she represents to enter into the terms

2  and conditions of this Consent Decree.

3        The Settling Parties hereby enter into this Consent Decree.

4

5                                         CITY OF SACRAMENTO

6

7  Date: 11/10/2011 _____      /s/ John F. Shirey (original signature retained by
                                          attorney Roberta Larson)
8                                         By: JOHN F. SHIREY, CITY MANAGER

9                                         CALIFORNIA SPORTFISHING PROTECTION
                                          ALLIANCE
10

11 Date: 10/25/2011 _____      /s/ Bill Jennings (original signature retained by
                                          attorney Drevet Hunt)
12                                        By: BILL JENNINGS

13 APPROVED AS TO FORM:                   For CITY OF SACRAMENTO

14

15                                        SOMACH SIMMONS & DUNN, PC

16

17 Date: 11/10/2011 _____      /s/ Roberta Larson (as authorized 11/10/2011)
                                          By: ROBERTA L. LARSON
18
                                          For CALIFORNIA SPORTFISHING
19                                        PROTECTION ALLIANCE

20                                        LAWYERS FOR CLEAN WATER INC.

21

22 Date: 10/28/2011 _____      /s/ Drevet Hunt (as authorized on 10/28/2011)
                                          By: LAYNE FRIEDRICH
23                                              DREVET HUNT

24

25

26

27

28

1

**<u>ORDER</u>**

2       The court having considered the foregoing, and also having reviewed the letter from the U.S.

3 Department of Justice filed on December 28, 2011, HEREBY ORDERS that the above captioned

4 action against all parties is dismissed with prejudice and all pending dates and deadlines are vacated.

5       IT IS FURTHER ORDERED that, through the Termination Date specified in paragraph 9 of

6 the Consent Decree, the Court shall retain jurisdiction over CSPA's claims against Defendant for the

7 sole purpose of enforcing compliance by the Settling Parties with the terms of the Consent Decree;

8       IT IS SO ORDERED.

9

10 DATED:  January 9, 2012.

11                                            _____

12                                            UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28